Good morning, Mr. Moneymaker. Good morning, Your Honor, Mr. Moneymaker. The law firm of Moneymaker & Moneymaker appearing on behalf of the appellant, the Johnsons & Santa Barbara Capital Management. Your Honor, I'd like to reserve five minutes of my time to respond at the end of this. Our appeals basically raises two points, that we think that there is, or established, issues of fact which require this matter be submitted to a jury, and that a summary judgment based upon that fact is improper. Our major argument is that the issue of the existence of Slatkin's actions, which he served as a stockbroker for our clients, remove this case from the bankruptcy code sections for the recovery fraudulent conveyance. The bankruptcy code is very clear that if a person is a stockbroker in his transactions, a trustee may not bring an action under either 544, 546, 548, to recover the monies paid out in their relationship. What makes him a stockbroker? I understand that he was just a customer of a stockbroker, but not a stockbroker. Well, he was acting as a stockbroker for my client. Was he licensed as a stockbroker? Pardon me, Your Honor? Was he licensed as a stockbroker? No, the code does not require him to be licensed. The legal definition does not require him to be licensed as a stockbroker, to be a stockbroker within the meaning of the bankruptcy code. Was he with a firm that was a member of any exchange? I don't believe so, no. But, again, that's not a requirement. He's a stockbroker. Am I a stockbroker if I just say I'm a stockbroker? I've got a few stocks. Well, you might be acting as a stockbroker if you say give me money and I'll buy stocks for you and place it in an account which I will maintain for you. That makes you a stockbroker within the meaning of the bankruptcy code. And under those circumstances, the monies paid out and the transactions between the parties are not subject to a fraudulent conveyance action, because the theory being when you get the money from me as a broker, you're holding it in trust for me, and the money you pay back is money paid out of the trust created by the stockbroker relationship. But it doesn't require a licensing at all. It just requires the intent of the customer, which is the Johnsons who gave him the And that fact is supported, Your Honor. Did he list himself in the yellow pages as a broker? I don't know how he listed himself, but he was certainly known throughout the Scientology community as a man who was very clever with investing people's monies. He was clever, all right. Yes. So I don't know how he advertised, but he certainly got a lot of customers. But my client and four others were treated differently than everybody else. Under the 1999 tax return, they are specifically broken out as to be receiving capital gains treatment from Mr. Slatkin, which isn't facts which apply to anybody else in the relationship. So we submit that the tax return created an issue of fact, together with the Johnsons' testimony, that Slatkin was acting as their broker. And if he's acting as their broker, then the monies paid to them are exempt from the fraudulent conveyance sections of the bankruptcy code. We think that's an issue of fact. We submit that that should have been determined by a jury under our demand for a jury trial on all issues. What fact is in dispute? I don't understand. His tax return is his tax return. I mean, the judge can look at it and... Well, the argument is... My understanding was the trustee's argument was that he wasn't a broker because he was a crook. I mean... Okay, but that's a... He was running a Ponzi scheme, and therefore he couldn't be a broker. Yeah, but that's not a factual thing. That's the judge's conclusion, legal conclusion. What fact is in dispute? Well, I'm not sure there are any. Well, that's why summary judgment is appropriate either for you or for them. But... Well, I would submit, Your Honor, there is an argument as whether the intent of Slapkin to default they by the way, there's really not much evidence in this other than the plea agreement, which is that I was operating a Ponzi scheme. Therefore, because he was operating a Ponzi scheme, he couldn't be a stockbroker. I think that those are not mutually exclusive definitions. He could have been operating a Ponzi scheme with other people and acting as a stockbroker for my client, which his tax return indicated he was doing. So I submit that the issue of fact is whether his Ponzi scheme and transactions and intent with the other party somehow slop over onto the Johnsons, despite the fact there isn't a scintilla of evidence anywhere in the record that the Johnsons received anything other than the money from their investments, which we argue is exempt from the transaction because Slapkin was their stockbroker. And the case law is very clear on this. It doesn't make any difference what Slapkin's intent was. Is there any evidence in the record that your client did any transaction in terms of brokerage? My client did not act as a broker. So it wasn't a stockbroker. My client was not the stockbroker. He was dealing with Slapkin, treating Slapkin as a stockbroker. Well, I mean, is there any evidence that the Ponzi scheme artist was actually in the brokerage business? Well, only the evidence we were able to discover. We had very little time to get any evidence. But the 1999 tax return breaks out five people who received capital gains treatment from Slapkin. We submit that that's documentary evidence. So those five people, he was acting as their broker. And I think that's an issue of fact. I don't see how that creates a fact. All it just says is that there's some tax due because somebody had a gain, not that something was brokered. Well, Your Honor, the definition is fairly simple under the code as to what a broker is. It's a person who takes money for the purpose of investing it in a market for a customer. And a customer is a person who gives them the money. I mean, you know, it's not a complicated definition. And there are case authority on it that says if that happens, they're acting as a broker. And that exempts it from the Ponzi scheme. What brokers generally do is they, on one hand, represent a buyer and on the other hand, a seller. Your Honor, let me read. I'm reading from page 14 of the opening brief. From this definition of a stockbroker, two criteria exist for the debtor to be classified as a stockbroker. One, the debtor must have customers. And two, the debtor must be engaged in a business of effecting transactions and securities. That's it. Doesn't have to be licensed. Doesn't have to be registered on a brokerage or a listing. Doesn't have to be anything. He simply must have customers. And no question that Black can have customers. And he must be engaged in the business of effecting transactions and securities. And he was doing that. And he testified he was doing that. There's no dispute about that. So we think by that definition, Johnson was a customer. And by the way, an investor qualifies as a customer when the index is under Baker again versus Getty. Page 16 of the brief. An investor qualifies as a customer when the investor deposits money and securities with the debtor with the expectation that the debtor purchase a stock or trade security. It is the act of entrusting the cash to the debtor for the purpose of effecting security transactions that triggers the customer's status. Whether the debtor plans to purchase the security for the funds or defraud the investor is irrelevant. And again, you know, those are the definitions under the Code. And I think that's an issue of fact, whether Johnson fell within those two categories in the relationship with Slatkin, and thus triggered the exemption from the fraudulent command section under the Bankruptcy Code. And I submit we are entitled to have that issue submitted to a jury. And we think that that is bolstered not only by Johnson's testimony, but by tax return, which he was listed as holding capital gains for the benefit of the Johnsons. The other issue of fact, let me move away from that, is the question of whether it was up to the trustee to prove how much of the money being distributed each of the seven years that my client was sued for came from Ponzi money and how much came from honest investments. We believe the evidence is overwhelming. I, in fact, admitted that Slatkin had substantial honest investments, substantial. He filed a tax return in 1999 showing honest income in excess of $20 million. How much did your folks put in with Slatkin? It's unclear to me. They got tagged. The judgment against them is $5 million plus change. I think they invested maybe about $3.5 million, somewhere along the line. Do I understand correctly that the trustee only sought to avoid the amount over which they invested? Yes. The suit was to get back any profits under the theory that those are not supported by fair consideration because it was Ponzi money, money taken from later investors, which was paid to them under this Ponzi scheme. And, therefore, those payments were not profits, but, in fact, fraudulently conveyed money belonging to investors, new investors. So the amount of the judgment against them is for what the bankruptcy judge determined to be, over and above their return of capital? Yes, that's right. Any profit they made during the seven years that they were dealing with Mr. Slatkin, they sought to recover that plus interest. Remember, my client not only is making that money, they're paying income taxes on it, they're reporting it under tax returns, et cetera, et cetera. Because they've paid taxes, substantial taxes, in receipt of that money. I suppose they could file an amended return. Well, they can to a certain extent, but it doesn't really work out that well. But, anyway, our argument is that the trustee should have been restricted to recover, should have been put to the proof of how much money that was paid to them during that seven years came from new investors and how much was, in fact, just money Slatkin earned honestly. And the only record we were able to come up with in a really short time was a 1999 return, which showed he made honest money over $27 million. I suspect he made more than that in the earlier years. If he didn't distribute that much, no fraudulent conveyance occurred. If he distributed something over that, that amount over that creates a percentage maybe subject to recapture. But I don't think that's unusual. I mean, I don't think that just because there's, well, I operated a Ponzi scheme, and the trustees all, everybody give the money back. I think you have to prove a little more than that. And we've also questioned the validity and the efficacy of that plea agreement. Remember, he wasn't convicted of operating a Ponzi scheme. He was convicted of mail fraud. And, granted, this Ponzi scheme statement and that plea agreement strikes me as being something toned into the trustee's request to help the trustee in the lawsuit. But that was the trustee's case. Why did he engage in fraud? Oh, yeah. Well, there's all kinds of fraud, though. A fraud in cheating people out of their money is not the same as a fraud in paying money out to third parties. There's a difference in the type of fraud we've got here. I don't doubt that he cheated people out of their money. The argument was that he committed fraud by paying my client his profits. And we submit there was no fraud if, number one, number one, he was a stockbroker, and number two, if all of the money paid were from honest profits. But what he admitted was the species of fraud that is of the Ponzi variety. No, he did not admit. Well, he says that in the plea agreement. That's what I'm saying, yeah. That's not what he was convicted of. Well, the plea agreement explains what he was convicted of. Well, except it was totally unnecessary for his conviction. His conviction wasn't for operating a Ponzi scheme. Ponzi scheme, another of his convictions, that seems to be a little fillip that was thrown in there to, I think, assist the trustee in a civil action. But it wasn't really. He wasn't convicted of a Ponzi scheme. Well, I don't know that there's a crime called Ponzi scheme. They charge it as mail fraud or wire fraud. Yes, but, Your Honor, there's a difference. In those cases, he is being convicted with stealing money from third parties. The money he gets is fraudulent. The Ponzi scheme is that he took money and paid it out. And you're right. I'm not sure there is a crime for a Ponzi scheme. But that's what they base their case on, the fact that he said that in the plea agreement. And I think an effort to cater cooperation with the U.S. trustee's office and everybody else. You know, he might have to, you know, I think there was a judgment for restitution. Obviously, to the extent the money could come back in and pay those other creditors reduced his restitution obligation. So I think there was some motivation on Mr. Slatkin's behalf to cooperate with that extent. But there is no evidence whatsoever he paid any Ponzi money to my client Johnson's. None. To just this statement, was operating the Ponzi scheme. The trustee says that Johnson's got this amount of money. The bankruptcy court says give it back. You know, I think that's the issues of fact which require a trial before a jury. Whether there was a stockbroker transaction, number one. And number two, how much money was paid to Johnson that came from new investors? And I don't think anybody can just say, well, if there was a Ponzi scheme and maybe $1,000 or $2,000 was paid from the new investors, all of the money that Johnson's received is subject to recapture. That really strikes me as a reach. Those are my two issues of fact. If there's any time left, I'd like to reserve it for rebuttal. Thank you. Thank you. Good morning. Good morning, Your Honor. John Reitman of Gunport Reitman, appearing for the Pele, R. Todd Nielsen, who was the trustee of the Slacken Bankruptcy Estate and is the trustee of the Slacken Liquidating Trust. Could you speak a little more directly into the microphone? We're sending this to Boise, Idaho. Sorry. Okay. There are really three things that happened in this case that are germane. First of all, in January 2003, the bankruptcy court enters a partial summary judgment that Slacken's plea agreement is conclusive as to his fraudulent intent. Mr. Moneymaker refers to it, describing it as a Ponzi scheme, but part of what Mr. Moneymaker says is that of the $593 million that he took in through his fraudulent scheme, the bulk of investor funds was used to operate a massive Ponzi scheme whereby he defrauded his investors by paying them returns largely with funds raised from other investors. That, of course, is the definition of a Ponzi scheme. That ruling was affirmed by the district court on an interlocutory appeal. The second thing that happens is in mid-2003, the bankruptcy court has a plan confirmation hearing. In order to confirm the plan of reorganization, one of the things that the court had to determine was that Slacken was not a stockbroker, and it made that determination. And it made that determination really on two bases that are sort of intertwined. One is that Slacken was a customer of brokers, not a broker himself, and, two, that he operated a Ponzi scheme and, therefore, had no ordinary course of businesses required by the stockbroker definition. Were the Pellants part of that litigation? They were part of the litigation in the following sense, Your Honor. They were claimants. They had not filed a proof of claim, but they asserted that Slacken was indebted to them, and, in fact, in discovery responses, they said, if you recover from me, I'm entitled to offset that against things like the taxes I paid and how I was defrauded. And ---- Well, is that holding a bar against the plaintiff's claim? I believe it is, Your Honor. And it is for the following reason. Even though they weren't party or given notice or served or anything? Well, let me address that two ways. First of all, there were 120 people who objected to the plan of reorganization. If I were to ---- Were these a party to it, the plaintiffs here, a party, one of the 120? They did not physically appear, Your Honor, no. But they were in the same category in all but a handful, which is those were people that the trustee had sued to recover fraudulent transfers. They had not filed proofs of claim. And there is no requirement to file a proof of claim. A creditor is defined as a person who has a claim, whether it's disputed, contingent, liquidated, or unliquidated. And that's under Bankruptcy Code 1015 and 10110. And the Johnsons fall within that category by virtue of their claim. So they're given notice of the pleadings and the hearing and could participate at their election? If they wanted to, they could have participated. And a hundred and ---- That's all I'm interested in. Okay. So the court had to find that Slatkin was not a stockbroker. And that's precisely what it did. The third thing that happens is there's a second summary judgment motion that results in a $5 million judgment against the Johnsons and their company. And the Johnsons have acknowledged that they're the same thing as their company. So whatever's owed by the company is owed by them. In that proceeding, the court looked at whatever evidence the Johnsons had put forth and came to the same conclusions, said, Johnsons are liable. Slatkin operated a Ponzi scheme. Slatkin is not a stockbroker. But why is he Mr. Moneymaker's big point here is why isn't he a stockbroker? He's taking money from people and affecting securities transactions, and then people claim the profits they make as capital gains just as you would if you were dealing with Merrill Lynch. Why isn't he a stockbroker? Well, he's not a stockbroker for a variety of reasons. But he's wrong on another ground as well. But let me take you to that rule, which is 741. And 741 of the Bankruptcy Code defines a stockbroker, and its significance has to do with how distributions are made and, in particular, the ability to recover a fraudulent transfer under Section 546 of the Code, which Mr. Moneymaker misunderstands. And I'll come to that in a moment. In order to be a stockbroker, you must be in the business of effectuating transactions and securities. Effectuating is different from causing. Your Honor, if you tell your secretary to place an order to buy stock, your secretary has done something for you. It's her conduct that causes the stock to be purchased. She's causing it. Is she effectuating the transaction? No. I think Judge Beezer said that's the person who puts together the buyer and the seller, and that's exactly what happens. The stockbroker is, for example, Merrill Lynch. It's the entity actually doing that. All of the evidence that came in, and this includes Mr. Johnson's evidence at the time in my mind, was that Slaken was simply a customer of stockbrokers. Mr. Johnson's testimony was, I saw Slaken call stockbrokers. It doesn't make him a stockbroker. It makes him the equivalent of your secretary calling and making a transaction for you. He's not effectuating transactions and securities. Secondarily, his business was not the business of a stockbroker. His business was operating a Ponzi scheme. And there is no ordinary course of business, one of the requirements of stockbroker, when you operate a Ponzi scheme. The Ninth Circuit is so held. And, indeed, one of the things that came into evidence at the summary judgment hearing, let's talk about the second one, this is the one where we get a $5 million judgment, is Slaken's testimony under oath. And the question kind of is, after some objections, what do you do for a living? And Mr. Johnson said, Mr. Slaken said, my business was operating a Ponzi scheme. And that's at Excerpt of Record 44, page 3028. Quote, my business was running a Ponzi scheme, close quote. Mr. Moneymaker also says, well, there's a triable issue of fact because Mr. Slaken's tax returns show trades attributable to Mr. Johnson. But what Mr. Slaken said was, again, this is at Excerpt of Record 44, which was before the bankruptcy court. Question. In other words, it's your testimony that the tax returns that you may have filed showing monies attributable to Glenn Johnson would have been false. Answer. That's correct. Question. And, in fact, there were no accounts available for Glenn Johnson despite the fact he filed a return showing that. Answer. Answer. That's correct. The short answer is Mr. Slaken was a customer. He did, in fact, do some transactions. But his business was operating a Ponzi scheme. And what Mr. Moneymaker wants you to do is he wants everybody to trace. But what Mr. Slaken has said, again, in his declaration filed in support of summary judgment, was everything I paid to Mr. Johnson came out of commingled accounts. There was no money that was hidden. There's no transactions. To be specific, because there was no actual investment account for the Johnsons, I made each of those transfers from a bank account in my name which contained the commingled money of my investors. All of the transfers that I made at the request of the Johnsons with respect to the Johnson account were made for the sole purpose of furthering my Ponzi scheme. In the Ninth Circuit, there is no tracing in a Ponzi scheme. If you did that, you'd never be able to do it. The other thing is, and I call the Court's attention to a confined judge, Posner, from the Seventh Circuit in Scholes v. Lehman. He says, quote, It is no answer that some or, for that matter, all of Phillips' profit may have come from legitimate trades made by the corporations. They were not legitimate. The money used for the trades come from investors gulled by fraudulent representations. And that's the case here. And that's one reason why there is no tracing in a Ponzi case. And the Ponzi, by the way, no tracing is U.S. v. Real Property, Blaine County. It's cited in the brief Ninth Circuit. On the issue, let me move aside to the issue of the Ponzi scheme itself. When we get to the second summary judgment, nothing is offered to controvert Slatkin's testimony in his declaration. There's nothing to controvert the statement of undisputed facts. Slatkin says, here's my plea agreement. Everything I said in that is true. I was a crook. Everything I paid to the Johnsons, I paid to them in furtherance of my Ponzi scheme. There were no accounts. There were no stocks purchased for the Johnsons. And this Court can affirm judgment on any grounds in the record. And I submit that as to Ponzi, the Court has three things. It has the first partial summary judgment. It has planned confirmation. And it has a second summary judgment. As to whether Mr. Slatkin was a stockbroker, I think that's an issue of law. I don't think there really are any disputed facts. That was done at planned confirmation, and Judge Rivlin addressed it again at summary judgment and said, I've listened to what you have to say and I'm not changing my mind. Let me go back to something I didn't cover, which was Mr. Moneymaker's mischaracterization of Section 546, which also defeats the stockbroker claim. Mr. Moneymaker says that under 546, if Mr. Slatkin was a stockbroker, none of the money that he paid to the Johnsons is recoverable. That's not true. In order for the money not to be recoverable, it had to either be a margin payment or a settlement payment. And Mr. Moneymaker offered nothing by the way of evidence. Mr. Johnson didn't offer anything by the way of evidence to show that any of the payments that they received were either settlement payments or margin payments. So for that reason as well, the claim stockbroker or its value fails. What Judge Rivlin said, it's a supplemental excerpt of Record No. 1 at page 91. Quote, in this case the Court has decided based on the evidence presented to it with respect to what Slatkin did in the relevant law that he was not a stockbroker. And there's a gap. Even taking into consideration everything in Mr. Johnson's declaration, the Court would not make any different determination. He, meaning Mr. Slatkin, was the customer of the brokerage houses. Finally, Mr. Moneymaker argues that the Johnson should not be charged with prejudgment interest. Judge Silverman was on the panel that disposed of that issue in Von Dauten and said that interest is recoverable. I think that's the case. Let me just double check. Yeah. I also want to point out to the Court the Jenner case where the Ninth Circuit ruled on the preclusive effect of the plea agreement that Mr. Slatkin entered into. And unless the Court has questions, I've finished. Judge Nelson? Judge Beeser? None. Thank you, Mr. Rivlin. Thank you, Your Honor. All right. Mr. Moneymaker, you've got the last word. Yes, Your Honor. First of all, counsel obfuscates the distinction between being enlisted as a creditor and filing a claim and participating in the bankruptcy process. The fact that the Johnsons may have been enlisted as a creditor and may even feel they had some claims is not subject to the jurisdiction of the bankruptcy court. It would be subject to the jurisdiction of the bankruptcy court so they could be bound by these various administrative rulings and other rulings and waive their right to a jury trial. They must file a claim. He admits they never filed a claim. In the Chapter 11 administrative hearing, they did not participate. This argument that there were all these other people and Johnson was one of those groups isn't true. He wasn't. They weren't involved. They specifically decided not to participate in the bankruptcy process, and they are not subject to the administration of the bankruptcy hearing, nor are they bound by the findings made by Judge Rivlin in the hearing in which they did not participate, did not file a pleading, and were not involved in. This argument about commingling the money, I have raised in the brief, and they haven't responded to it in the brief, that all brokers commingle money. No broker hopes it's a separate bank account for each investor. They put their money in a general fund and keep track of it through an internal accounting process, which Slatkin testified he did. He said, I know what their money is, et cetera, et cetera. There is a question here, who's got the burden of proof? The trustee says he said he was operating a Ponzi scheme and everything was a Ponzi scheme and therefore that's enough. There is a wealth of evidence that Slatkin had money from other than the Ponzi scheme. He had business investments. He had rents. He owned real estate, et cetera. He filed a tax return showing he made that one year over $27 million from these investments. That wasn't Ponzi money. There's no finding that the tax return was false. He wasn't convicted of tax evasion or tax avoidance. $27 million in one year isn't a bad return. If he had money from other sources, it seems to me, by rule of reason the trustee has got to show how much of Ponzi money was paid as opposed to money from honest investments. That's not a tracing issue. It's a mathematical computation. As I've indicated, they have the tax returns for each year. They could easily prove how much more than the money reflected he got each year in the tax return came from new investors by matching that to the distributions. Instead, they say, well, Slatkin said everything was a Ponzi scheme. All my money was a Ponzi scheme. They throw this Ponzi scheme label on everything and that's their answer. No, their answer is they don't have to trace it. That's their answer. I don't think they have to trace it, but they have to show that more money was paid out than he earned honestly. That's not a tracing issue. That's a mathematical computation. Let's assume in 1999 he made over $27 million. He distributed about $27,000 more than the 27 million. So 1% of the money presumably would have come from new investors. Does that mean for 1999 they can recover back everything paid out 100% or are they entitled only to 1% of what was paid out in 1999? That's not a tracing issue. It's not terribly difficult either. Their position is he said it was a Ponzi scheme. He said he was always in a Ponzi scheme. He didn't have any money other than Ponzi scheme. Despite the fact the evidence is clear he did have money, income, other than from the Ponzi scheme, that they don't have to do anything else. I submit there are issues of fact here. And on the stockbroker issue, I submit to the court Mr. Reitman's argument ignores the fact that an investor qualifies as a customer. When the investor deposits money or securities with the debtor with the expectation the debtor will purchase stock or trade securities. That's the definition. Your definition assumes that you can do this on an oral basis. Was there any evidence before the bankruptcy judge as to a written agreement between the investor and your so-called broker? Well, I must confess to the court I don't know. There are 2 million documents in the trustees' No, I want to know what you know. Well, my understanding there are written documents in the trustees' possession in the warehouse which show these trades. Tons of them. There are written trade documents. Did you pursue discovery on them? Pardon me, Your Honor? Did you pursue discovery? Well, we did during the short time available. We couldn't depose Slatkin. He was incarcerated and the hearing on the summary judgment came about. You said the trustee had the documents. He wasn't incarcerated. No, but yeah, we pursued discovery. And the trustees' response is to stand at the warehouse, go look for it. Okay. So that was their response. We got the tax return, which we thought was pretty good, but we couldn't find everything else. And then the court blocked with an order later reversed. Did your client have any business records or papers that dealt with his brokerage agreement? Yes, I think they did, although my client worked at the Slatkin firm and everything was seized by the trustees,  they were in the 2 million documents in the warehouse. Did he testify or propose to testify in any affidavit in support of a continuance? Oh, yes. There was a motion for a continuance, which was denied by the bankruptcy court. We pointed that out. Did he testify as to what the arrangement was and documents that supported that arrangement? I believe Mr. Johnson's declaration is pretty extensive in that regard. I believe he did, yes. And when I say a court, I can't point to the line now, but the declaration by Mr. Johnson. Is it part of the excerpt of the record? Yes. Part of the excerpt. There was a declaration by Mr. Johnson laying this out. Okay. I'll take a look at it. That's why I didn't want to take the time. And I submit to the court that, again, this whole case comes down to that Slatkin says it was all a Ponzi scheme, therefore, end of story. I don't believe that's sufficient on a summary judgment. Thank you, Your Honor. Thank you, Mr. Reitman. Thank you as well. The case argued is submitted. Good morning.
judges: Beezer, Nelson, Silverman